**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-1148**

———————

TRINITY OUTDOOR, L.L.C.,

Plaintiff - Appellant,

versus

THE CITY OF ROCKVILLE, MARYLAND,

Defendant - Appellee.

--------------------

SCENIC AMERICA, INC.; AMERICAN PLANNING
ASSOCIATION; SCENIC MARYLAND, INC.; APA-
MARYLAND CHAPTER,

Amici Supporting Appellee.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  J. Frederick Motz, District Judge.  (CA-
03-2372-8-JFM)

———————

Argued:  October 26, 2004          Decided:  February 24, 2005

———————

Before LUTTIG, KING, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Edward Adam Webb, WEBB & PORTER, Atlanta, Georgia, for
Appellant.  Samantha M. Williams, VENABLE, L.L.P., Rockville,
Maryland, for Appellee.  **ON BRIEF:** Paul T. Glasgow, Sr., VENABLE,
L.L.P., Rockville, Maryland; Joann Robertson, OFFICE OF THE COUNTY
ATTORNEY, Rockville, Maryland, for Appellee.  Michael C. Worsham,
Forest Hill, Maryland; William D. Brinton, Cristine M. Russell,

ROGERS TOWERS, P.A., Jacksonville, Florida, for Amici Supporting Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff Trinity Outdoor, LLC ("Trinity"), an outdoor advertising business, appeals the district court's dismissal, for lack of standing, of its civil action against The City of Rockville, Maryland. According to the court, Trinity lacked standing to sue, and the court thus lacked subject matter jurisdiction in this dispute, pursuant to Federal Rule of Civil Procedure 12(b)(1). By its Opinion of January 15, 2004, the court concluded that Trinity's alleged injuries were not caused by the conduct it complained of and that its asserted injuries were not redressable by the court. <u>Trinity Outdoor, LLC v. City of Rockville, Md.</u>, No. JFM-03-2372, 2004 WL 78054 (D. Md.) (the "Opinion"). On appeal, Trinity maintains that the district court erred in its Opinion, in that standing to maintain suit was not dependent upon Trinity's registration with Maryland to do business or acquiring a state license to engage in outdoor advertising. As explained below, we affirm.

I.

Trinity, which is organized under the laws of Georgia, sought, during the summer of 2003, to pursue opportunities in the outdoor advertising industry in Maryland. Trinity first entered into lease agreements with respect to seven separate parcels of real estate located in Rockville's commercial or industrial districts. In July 2003, Trinity submitted to Rockville seven

3

applications for permission to erect freestanding "off-site" signs on those seven parcels, adjacent to major roads and highways (publicizing products, services, or activities available somewhere other than on the premises where the signs were to be erected). At that time, however, Trinity had not registered to do business in Maryland and it had not obtained a Maryland license to engage in the outdoor advertising business there. See Md. Code Ann., Corps. & Ass'ns, § 7-202 (requiring foreign corporations to register before doing business in Maryland); Md. Code Ann., Transp. § 8-708 (providing that persons may not engage in outdoor advertising business for profit in Maryland without license from State).

Rockville promptly rejected each of Trinity's seven applications, on the asserted basis that granting them would violate the Rockville City Code. Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. 3 at ¶¶ 6, 8.[1] The Rockville zoning ordinance then in effect, see Rockville, Md., Code, ch. 25, art. I, § 25-1 (providing for definitions), and ch. 25, art. XI, §§ 25-456 to -485 (providing for sign regulations) (collectively the "Sign Ordinance"), created

---

[1] In connection with proceedings in the district court on the jurisdictional issue, Rockville submitted the affidavit of its Chief of Inspection Services to the court, reflecting that the seven Trinity applications were rejected as prohibited off-site advertising. Trinity's Complaint, on the other hand, alleged that it received letters from Rockville dated July 11, 2003, and August 8, 2003, informing Trinity that all applications for billboards were "refused at the counter." Compl. at ¶ 33. This conflict over the manner in which Rockville denied Trinity's applications is not pertinent to our analysis.

4

a comprehensive scheme for regulating signs in the City, including provisions relating to permitting, placement, number, construction, size, height, design, operation, and maintenance. The Sign Ordinance mandated that no sign could be erected without Rockville's prior issuance of a sign permit, id. at § 25-462, and that no such permit would be issued by Rockville unless the proposed sign was of a type specifically authorized by the Sign Ordinance, id. at § 25-461(a).[2]

On August 15, 2003, Trinity filed its complaint against Rockville in the District of Maryland, alleging that the Sign Ordinance was unconstitutional as applied to Trinity and that it was facially unconstitutional as applied to third parties. More specifically, the complaint alleged, inter alia, that the Sign Ordinance "defines many signs based upon the content of the message" to be posted, and that it favors commercial over noncommercial speech. Compl. at ¶¶ 9, 67-70. As relief for Rockville's alleged transgressions, Trinity sought, inter alia, to

_____

[2] Among other requirements, the Sign Ordinance prohibited "signs which contain the name of a building, product, business, service or institution which is not located on the same lot as the sign," except for "temporary signs, permanent subdivision identification signs, and political signs erected in accordance with the requirements of this article." Id. at § 25-461(a)(3). While Rockville's Sign Review Board possessed limited discretion to authorize modifications of the Sign Ordinance's requirements on a case-by-case basis — where application of the Ordinance would result in "peculiar and unusual practical difficulties" or "exceptional or undue hardship," id. at § 25-458(c) — no such modification was available to circumvent the Sign Ordinance's prohibition of off-site signs. Id.

5

enjoin enforcement of the Sign Ordinance. On September 23, 2003, Rockville filed a motion to dismiss Trinity's complaint under Rule 12(b)(1), asserting that Trinity lacked the constitutionally mandated standing to sue — and that the district court thus lacked subject matter jurisdiction — because the claims asserted in Trinity's complaint were not redressable by the court. More specifically, Trinity had not registered to do business in Maryland, it had not secured a license from the State to engage in the outdoor advertising business, and its proposed signs failed to comport with the size restrictions established by the Sign Ordinance.[3]

On January 9, 2004, the district court heard argument on Rockville's motion to dismiss. Promptly thereafter, on January 15, 2004, the court issued its Opinion dismissing Trinity's complaint under Rule 12(b)(1), concluding that Trinity lacked standing to challenge the constitutionality of the Sign Ordinance. By its Opinion, the court held that Trinity's alleged injuries were not

---

[3] While this proceeding was pending, and as a result thereof, Rockville adopted a new sign ordinance, Ordinance No. 26-03, in October 2003, which added Chapter 19.5, entitled "Signs," to Rockville's municipal code. Rockville, Md., Code, Ch. 19.5, §§ 19.5-1 to 19.5-32. By Chapter 19.5, Rockville explicitly sought to enact safeguards that would stand even if Trinity succeeded in invalidating the Sign Ordinance. See Preamble to Chapter 19.5. Chapter 19.5 provided that the Mayor and the City Council of Rockville intended to limit the size of any erected signs and to ensure their safe construction and design. See id. One such safeguard was an overarching, absolute size limit on freestanding signs of 100 square feet. Id. at § 19.5-12.

caused by Rockville's conduct and those injuries were not redressable by the remedy it sought, in that Trinity was neither registered to do business in Maryland nor licensed to engage in the outdoor advertising business in that State. The court also noted a number of other probable defects with Trinity's complaint, and it observed that the subsequent enactment by Rockville, see supra note 3, likely impacted on Trinity's claims. Opinion at *3.

On January 29, 2004, Trinity filed its notice of appeal from the order of dismissal entered on January 15, 2004.[4] On appeal, Trinity contends that the district court erred in concluding that Trinity had failed to satisfy the criteria for constitutional standing.

## II.

A district court's dismissal for lack of standing is a ruling of law that we review de novo. Bryan v. BellSouth Communications, Inc., 377 F.3d 424, 428 (4th Cir. 2004). Importantly, we examine jurisdictional facts for clear error and as they existed at the time of the filing of the lawsuit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992).

---

[4] On July 12, 2004, six months after the Opinion was filed, Rockville amended the Sign Ordinance itself, in Ordinance No. 26-04. This amended Sign Ordinance purports to cure many of the alleged defects in the original Sign Ordinance; most significantly by providing that (1) the prohibition against off-premise signs does not pertain to noncommercial signs, id. at § 25-1, and (2) businesses may use otherwise permitted sign space to post noncommercial messages, id. at § 25-473.

7

III.

The question of standing to sue is an issue of constitutional dimension, in that Article III of the Constitution "limits the judicial power of the federal courts to resolving actual cases and controversies." Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990). The essence of the inquiry into constitutional standing simply focuses on whether the plaintiff is a proper party to institute suit. In order to possess standing, a plaintiff must demonstrate to the court: (1) an injury-in-fact that is concrete and particularized, rather than conjectural or hypothetical; (2) that the injury was caused by the conduct complained of; (3) and that such injury is likely to be redressed by a favorable judicial decision. Lujan, 504 U.S. at 560-61; see also Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir. 1998).

When an issue of standing is asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991). And in assessing a question of standing, a district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The elements of standing are then subjected to the same degree of proof that governs other contested factual issues. See Lujan, 504 U.S. at 561. At the pleading

8

stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)).

In these circumstances, we are constrained to agree with the analysis of the district court, as spelled out in its Opinion, that Trinity has failed to meet the second and third requirements of Lujan, 504 U.S. at 560-61, that is the causation and redressability elements of standing. It is undisputed that, when this litigation was initiated, Trinity had not registered to do business in the State of Maryland and it had not obtained an outdoor advertising license in that State. See Md. Code Ann., Corps. & Ass'ns, § 7-202; Md. Code Ann., Transp. § 8-708.[5] As more thoroughly explained in the Opinion, Trinity's alleged injuries, i.e., its inability to erect signs, were neither caused by Rockville's denial of its applications pursuant to the Sign Ordinance nor redressable by the court. Put simply, had Rockville granted Trinity's sign applications, or had the Sign Ordinance been invalidated in court, Trinity would yet have been unable, because

---

[5] Trinity represented to us at oral argument that it has now complied with, or that is in the process of complying with, the Maryland registration and licensing requirements. Because jurisdiction is assessed at the time a complaint is filed, see Lujan, 504 U.S. at 571 n.4, such after-the-fact compliance by Trinity does not affect this appeal. Any such compliance may, of course, be a factor should Trinity initiate a new lawsuit.

9

of its lack of registration and licensing, to engage in the outdoor advertising business in Maryland. We therefore reject Trinity's appeal of the district court's ruling, and we are content in so doing to adopt the reasoning of its Opinion. <u>See</u> <u>Trinity Outdoor, LLC v. City of Rockville, Md.</u>, No. JFM-03-2372, 2004 WL 78054 (D. Md. Jan. 15, 2004).

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

<u>AFFIRMED</u>